IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| DARIUS ANTWAIN LESTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 117-162 |
| ) | |
| NANCY A. BERRYHILL, Deputy ) | |
| Commissioner for Operations of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

_____

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Darius Antwain Lester appeals the decision of the Deputy Commissioner for Operations denying his application for Supplemental Security Income ("SSI") under the Social Security Act.  Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

### I.     BACKGROUND

Plaintiff applied for SSI on May 5, 2014, alleging a disability onset date of March 4, 2009. Tr. ("R."), pp. 18, 216, 239.  Plaintiff was twenty-six years old at his alleged disability onset date and was thirty-three years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration.  R. 29, 239.

Plaintiff applied for benefits based on allegations of multiple physical injuries, including traumatic brain injury, from a motorcycle accident, memory and hearing impairments, sleeping disorder, depression, headaches, and pain. R. 243, 320. Plaintiff alternately reported completing tenth or eleventh grade, but had not obtained a GED. R. 66, 244, 673. Prior to his alleged disability, Plaintiff had no past relevant work under 20 C.F.R. § 416.965, but in November 2016, he was working at a Krystal restaurant for approximately fifteen to twenty hours per week. R. 27, 69, 100.

The Social Security Administration denied Plaintiff's application initially, R. 166-69, and on reconsideration, R. 173-76. Plaintiff requested a hearing before an ALJ, R. 177-79, and the ALJ held a hearing on November 21, 2016. R. 54-115. At the hearing, the ALJ heard testimony from Plaintiff, who appeared with counsel, as well as from Plaintiff's mother and Mary Cornelius, a Vocational Expert. Id. On December 28, 2016, the ALJ issued an unfavorable decision. R. 15-33.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:[1]

1. The claimant has not engaged in substantial gainful activity since May 5, 2014, the application date (20 C.F.R. § 416.971 *et seq*.).

2. The claimant has the following severe impairments: neurocognitive disorder, traumatic brain injury, psychotic disorder, mood disorder and status-post fractures of the right lower extremity (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform

---

[1]Although the Commissioner's rules and regulations were revised in 2017, the Court cites to the rules in place at the time the ALJ issued his decision in 2016. See Fed. Reg. 15132-01 (Mar. 27, 2017).

       medium work as defined in 20 C.F.R. § 416.967(c).[2] The claimant can occasionally lift and carry 50 pounds, and frequently lift and carry 25 pounds. He is able to sit, stand, and walk for six hours in an eight-hour workday. He is able to frequently kneel, crouch, crawl, and climb ladders, ropes, and scaffolds. He is able to perform simple, routine, repetitive tasks and make simple work-related decisions, however, he is able to maintain concentration, persistence, and pace for periods of two hours, perform activities within a schedule, maintain regular attendance, and complete normal workday and workweek. He is able to tolerate occasional changes in a routine work setting. The claimant has no past relevant work (20 C.F.R. § 416.965).

5.    Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including hand packer, can filler, and food preparation worker, all unskilled jobs with an SVP of 2.[3]  (20 C.F.R. §§ 416.969, and 416.969(a)). Therefore, the claimant was not under a disability, as defined in the Social Security Act, since May 5, 2014, the date the application was filed (20 C.F.R. § 416.920(g)).

R. 20-28.

When the Appeals Council denied Plaintiff's request for review, R. 1-5, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ improperly weighed the medical opinions in the record. See doc. no. 11

---

[2]"Medium work" is defined as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

[3]Using the skill level definitions in 20 C.F.R. § 416.968, the Dictionary of Occupational Titles ("DOT") lists a specific vocational preparation (SVP) time for unskilled work of 1-2. See SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a).

("Pl.'s Br."). The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See doc. no. 14.

## II.   STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence

and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

The ALJ did not err in his evaluation or use of the medical opinions in the record. As discussed below, the Court therefore concludes the administrative decision is supported by substantial evidence.

### A. Standard for Evaluating Medical Opinions

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). Stated otherwise, a treating physician's opinion may be properly discounted if it is

5

unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis, 125 F.3d at 1440; see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities).

Although the Commissioner is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion, Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985), she must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Moore, 405 F.3d at 1212 (finding no reversible error in discounting treating physician's opinion where ALJ articulated specific reasons for doing so). When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (*per curiam*) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

Additionally, the Commissioner's regulations require that the opinions of examining physicians generally be given more weight than non-examining physicians, the opinions of treating physicians generally be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) generally be given more weight than non-specialists. See 20 C.F.R. § 416.927(c)(1)-(2), (5). However, the weight

6

afforded to a non-examining physician's opinion depends, *inter alia*, on the extent to which clinical findings support it and consistency with other evidence. Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 873 (11th Cir. 2011) (*per curiam*). State agency medical consultants' opinions may be entitled to greater weight than the opinions of treating or examining sources if they are supported by evidence in the record. Id. at 873-74 (finding ALJ properly gave more weight to non-examining state consultants' opinions over treating physician's opinion that was inconsistent with treatment records and claimant's ability to work during relevant time period); see also SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996)[4] (findings of fact made by state agency medical consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review).

Lastly, under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996); see also 20 C.F.R. § 416.927(d).

### B. The ALJ Properly Considered the Opinions of Examining and Non-Examining Physicians

#### 1. One-Time Examiners Versus State Agency Consultants

Plaintiff complains the ALJ erred in giving partial weight to one-time consultative examiners but giving "great weight to the opinions of the non-examining medical reviewers who did not see, treat, or examine" Plaintiff. Pl.'s Br., p. 12. Plaintiff does not identify these

---

[4]Although SSR 96-6p was rescinded when the Commissioner's rules were revised in 2017, it was in effect at the time of the ALJ's decision in 2016. See 82 Fed. Reg. at 5845.

7

reviewers by name or otherwise identify any particular portion of any specific opinion that is problematic or would change any specific portion of the RFC determination and/or ability to perform the jobs identified. Id. However, given the citation to Exhibits B4A and B6A, as well the discussion in the summary of material facts, (Pl.'s Br., pp. 6-7), the Court presumes Plaintiff is complaining the ALJ gave more weight to state agency consultants Jacquelyn Bean, Psy.D, and Surgeon Cole Ph.D., than to one-time psychological examiners Edwin Speer, Ph.D., Adrian Janit, Ph.D, and Katherine Moyer, M.D., at East Central Regional Hospital.

In conducting a sifting analysis of the record, the ALJ stated Dr. Speer determined in 2010 Plaintiff operated in the borderline range of intellectual abilities but would be able to understand and follow simple job instructions and had no emotional or cognitive issues to impair his ability to function in the work place. R. 24 (citing Ex. B2F). The ALJ also reviewed in detail the findings of the 2014 consultative examination by Dr. Janit. R. 24-25 (citing Ex. B7F). Contrary to Plaintiff's description of Dr. Janit's findings, (Pl.'s Br., p. 5), the diagnosis was "Rule Out Major Neurocognitive Disorder, Due to Traumatic Brain Injury, With Behavioral Disturbance." R. 574 (emphasis added). Dr. Janit also noted mild and moderate limitations in Plaintiff's work-related mental abilities ranging from understanding and carrying out instructions to maintaining attention and withstanding work setting stressors and timely completing tasks. Id. In January 2015, Dr. Moyer opined Plaintiff had a Full Scale IQ of 71, might have difficulty understanding and learning complex material, and might benefit from simple, short instructions. R. 25 (citing Ex. B7F).

In this portion of the administrative decision, the ALJ also discussed Plaintiff had received sporadic treatment at Serenity Behavioral Health. R. 25. Although a note dated November 6, 2014, recorded Plaintiff's reports of, *inter alia*, depression, mood swings, and

loss of focus, it also recorded that at a following up examination on December 23, 2014, Plaintiff's behavior, thought content and process, as well as mood, were all within normal limits. R. 25-26 (citing Ex. B6F). The ALJ went on to explain that after reviewing these doctors' reports, Plaintiff had received relatively no medical treatment for his alleged impairments, his IQ scores were in the borderline intellectual functioning range, and although he had underlying mood and psychotic disorder, Plaintiff testified as to taking monthly shots that had improved his condition, to the point he was working part-time. R. 26. Indeed at the step three analysis, the ALJ had also reviewed Plaintiff's mild restrictions in daily living and social functioning, and despite moderate difficulties in concentration, persistence or pace, Plaintiff had a demonstrated ability to perform simple, routine, one-to-two step tasks. R. 22.

In formulating Plaintiff's RFC that resulted in the identification of three, unskilled jobs "which need[] little or no judgment to do simple duties that can be learned on the job in a short period of time," 20 C.F.R. § 416.968(a), the ALJ also relied on the consultative opinions of state agency consultants Drs. Bean and Cole. The ALJ cited these opinions finding no limitations in activities of dialing living, mild limitations in maintaining social functioning and limitations in maintaining concentration, persistence and pace. R. 27. The ALJ gave great weight to these opinions as generally consistent with the medical evidence of record. Id. As described above, state agency medical consultants' opinions may be entitled to greater weight than the opinions of treating or examining sources if they are supported by evidence in the record. Jarrett, 422 F. App'x at 873-74. Moreover, even though the ALJ owes no deference to the opinion of a one-time examining physician, Eyre v. Comm'r, Soc. Sec. Admin., 586 F. App'x 521, 523 (11th Cir. 2014), the ALJ afforded partial weight to the opinions of Drs. Sperr, Moyer, and Janit.

9

The ALJ explained he gave partial weight to the consultative examiners as "generally consistent" with the evidence of record and afforded great weight to the state agency examiners as consistent with the medical evidence. R. 25-27. Plaintiff's brief spends much of the argument on this point explaining case law concerning the rejection of a treating physician's opinion, but he identifies no treating physician's opinion the ALJ here allegedly improperly rejected. Pl.'s Br., pp. 10-11.

To the extent he meant to challenge the rejection of the opinion of treating physician Angela Wright, M.D., that argument is a non-starter. She wrote a three-line letter stating Plaintiff had been followed for several, unidentified "chronic illnesses," and concluded, "Because of these illnesses, he/she is unable to work in any situation part or full time." R. 632. The chronic illnesses are never identified in the letter, and there are no treatment records attached. There is only an attachment dated March 2, 2016 containing a bullet point list of "active" problems and past medical history. R. 633. The ALJ assigned little weight to the opinion, explaining it was inconsistent with the extensive medical evidence reviewed just prior in the opinion and specifically stated, "Dr. Wright's opinion meets no specific restrictions, is not based on any recent evaluations and should be reserved for the commissioner." R. 27. Substantial evidence supports the ALJ's decision to discredit Dr. Wright's opinion. See Winschel, 631 F.3d at 1179; Lewis, 125 F.3d at 1440; SSR 96-5p.

Even when Plaintiff argues about a "shifting pecking order" from treating physicians to non-treating examining personnel and medical records reviewers, he relies on case law discussing the rejection of an examining doctor's conclusions that provided the only medical evidence in the record. Id. at 11-12 (discussing Lamb v. Astrue, 523 F. Supp.2d 1308 (S.D. Ala. 2007)). Here, the ALJ gave partial weight to the consultative examiner opinions and discussed

the "unremarkable" findings in the medical evidence of record. R. 24-27. The ALJ did not rely solely on the state agency medical consultants.

As noted from the outset, in his legal argument, Plaintiff fails to identify with any specificity what portions of any particular opinions were in conflict with the RFC or would otherwise prevent him from performing the unskilled work identified by the ALJ. Plaintiff dutifully recites examiners' findings, but other than apparently suggesting the opinion of a one-time examiner is *automatically* entitled to more weight than the opinion of a non-examining consultant, has not explained: (1) *why* giving them partial weight was error in light of all the record evidence, or (2) *how* the RFC limitations do not account for all valid limitations found by the ALJ.

His argument consists mainly of a factual recitation of diagnoses. However, a mere diagnosis of an impairment does not equate with a finding of disability. Not only is the ultimate conclusion on disability an issue reserved for the Commissioner, SSR 96-5p, but disability hinges on the functional limitations attendant to diagnoses that would prevent an individual from working, not the mere existence of an impairment. See Moore, 405 F.3d at 1213 n.6 ("[T]he mere existence of these impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard.").

A claimant has the burden of proving his disability and is responsible for providing evidence in support of his claim. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Recitation of a list of diagnoses does not establish functional limitations unaccounted for in the ALJ's RFC. Plaintiff may disagree with the ALJ's interpretation of the evidence, but this Court's job is not to re-weigh the evidence. See Moore, 405 F.3d at 1211. Substantial evidence supports the ALJ's decision to afford more weight to the opinions of the state agency consultants

over those of the treating physician and one-time examiners, and the first argument forms no basis for reversal or remand.

### 2. Subsequently Submitted Medical Documents

Plaintiff also argues the ALJ should not have relied on the opinions of non-treating and non-examining reviewers who did not see or review progress notes from Serenity Behavioral Health or a "short medical report" from the office of treating physician, Angela Wright. Pl.'s Br., pp 12-13. Plaintiff argues, "Since the earlier medical professionals had not seen or considered this [later] information, this *should* compromise the validity of their assessments and therefore *should* seriously question the validity of the ALJ's findings." Id. at 12 (emphasis added). Notably missing from Plaintiff's conjecture is an explanation about what, if anything, in the subsequently presented records conflicts or otherwise undermines the opinions of the reviewers. Moreover, the ALJ specifically stated, (R. 27), he gave great weight to the opinions of Drs. Bean and Cole because their findings were "generally consistent with the medical evidence of record," which included all of the Serenity records and the letter from Dr. Wright.

As noted above, the three-line letter from Dr. Wright that did not have any treatment records attached, yet concluded Plaintiff was unable to work, was considered and properly discounted by the ALJ. Indeed, as the ALJ noted, Plaintiff had received relatively no medical treatment for his alleged impairments and his consultative examinations had been unremarkable. R. 24, 26.

Plaintiff's argument about the Serenity records is equally unavailing. The first set of records from Exhibit B6F were specifically considered and addressed by the ALJ as having certain issues reported on November 6, 2014, but then resolved to within normal limits by the

12

follow-up visit on December 23, 2014. R. 25-26. Plaintiff fails to identify how such unremarkable findings undermine any opinion of a state agency consultant such that an ALJ who conducted a review of the entire record would be prohibited from determining a state agency consultant's opinion, even if formulated prior to the 2014 Serenity records, was generally consistent with the record as a whole. The remaining Serenity records Plaintiff cites, Exhibits B9F, B10F, and B11F, are dated from July 20, 2015 through October 12, 2016, all of which pre-date the administrative hearing on November 21, 2016, and which were also available to the ALJ when he determined the state agency consultant opinions were consistent with the record.

Despite Plaintiff's assertion these "voluminous" records *should* undermine the validity of the consultants' and ALJ's opinion, he points to not one piece of information in the records that *would* undermine the administrative decision. To the contrary, the records are in accord with the ALJ's finding Plaintiff "has less problems" since taking his monthly shots, R. 26, and is capable of performing medium, unskilled work, R. 28. See, e.g., R. 657, 663 (Oct. 19, 2016, no current medical problems; Mental Status Exam within normal limits); R. 724, 726 (Apr. 6, 2016, "I'm here for my shot."; "Says he is doing good and mood is stable."; Psychiatric Exam within normal limits); R. 744 (July 20, 2015, stable mood, taking meds as directed, no side effects or new symptoms, no primary care); R. 715 (Oct. 14, 2015, stable mood, denied mood swings, irritability or depressive symptoms, sleep and appetite good, no medicinal side effects); see also R. 666, 669, 672 (Sept. 30, Oct. 9, Oct. 23, 2015, trying to find a job).

Plaintiff mistakenly relies on a prior unpublished decision of this Court for the proposition remand is necessary when subsequent medical evidence is submitted that is not reviewed or considered by persons upon whose opinions the ALJ relied. Pl.'s Br., pp. 12-13. In the prior decision, the Court concluded the ALJ did not establish good cause to discount the

opinions of two treating physicians.  Payne v. Colvin, No. 113-107, 2014 WL 3361917, at *3 (S.D. Ga. July 8, 2014) (Hall, C.J.).  Despite a medical record documenting extensive treatment for pancreatitis, including multiple operations, the ALJ in conclusory fashion discounted one set of treating opinions as "inconsistent with the record as a whole," and completely ignored a second set of treating opinions which were in fact consistent with the opinions discussed but discounted.  Id. at 4.  In concluding the ALJ in that case erred in weighing the treating physicians' opinions, the Court also noted both sets of treating opinions had been prepared after a non-examining medical consultant had provided an RFC assessment to which the ALJ gave great weight.  Id. at 3, 4.

Here, however, as discussed above, the three-line letter by treating physician Angela Wright was properly discounted.  Moreover, the ALJ's opinion conducted a sifting analysis of the entire medical record, noting "relatively no medical treatment" for alleged impairments and "unremarkable" findings of consultative examinations.  R. 24-26.  The holding of Payne was not that an ALJ can never rely on an opinion when any medical evidence is subsequently submitted.  Rather, the Court determined treating physician opinions - that happened to be offered after the opinion upon which the ALJ relied -  were improperly discounted for multiple reasons.

The rule in the Eleventh Circuit is "taken alone," opinions of non-examining physicians "do not constitute substantial evidence on which to base an administrative decision."  Wilkinson v. Comm'r of Soc. Sec., 289 F. App'x 384, 386 (11th Cir. 2008) (citing Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)).  Here, the ALJ did not rely solely on the opinions of the non-examining physicians, but instead appropriately considered them in the context of the entirety of the medical evidence of record, as well as Adult Function Reports, and testimony at the administrative hearing from both Plaintiff and his mother.  See id. ("The ALJ did not give

undue weight to the opinion of the non-examining state agency physician because he did not rely solely on that opinion . . . . The ALJ considered the opinions of other treating, examining, and non-examining physicians; rehabilitation notes indicating improvement; and [the claimant's] own disability reports and testimony.")

The second argument forms no basis for reversal or remand.

### IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 4th day of December, 2018, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA